**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

DANIEL D'ANGELO, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class*,

                        Plaintiff,

     v.

HUNTER BUSINESS SCHOOL, INC.,
and JAY FUND,

                      Defendants.

---

Civil Action No.: 2:21-cv-03334

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,**
**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**AND APPROVAL OF THE FLSA SETTLEMENT**

 

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

  I.    Procedural History .................................................................................. 1

  II.   Overview of Investigation and Discovery ............................................. 2

  III.  Settlement Negotiations ......................................................................... 3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ........ 3

ARGUMENT ......................................................................................................... 4

  I.    The Settlement Class Meets the Legal Standard for Class Certification ........... 4

    A.    Numerosity ................................................................................ 5

    B.    Commonality ............................................................................. 5

    C.    Typicality .................................................................................. 6

    D.    Adequacy of the Named Plaintiff ............................................ 7

    E.    Certification Is Proper Under Rule 23(b)(3) ............................ 8

      1.   Common Questions Predominate ..................................... 8

      2.   A Class Action Is a Superior Mechanism ....................... 9

  II.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ........................................................ 10

    A.    The Proposed Settlement Is Substantively Fair ...................... 10

      1.   Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1) 11

      2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ......................... 12

      3.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ................................. 14

      4.   Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) 15

      5.   Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ......................................... 16

      6.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ........... 17

      7.   The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ....................................... 17

    B.    The Proposed Settlement Is Procedurally Fair ........................ 20

      1.   The Settlement Was the Result of Arm's Length Negotiation .............................. 20

      2.   The Distribution of Class Notice Satisfied Due Process ......................... 21

i

III.  Approval of the FLSA Settlement Is Appropriate Under Federal Law ............................ 23

CONCLUSION ........................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 8, 9

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) .............................. 23

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 663 N.E.2d 886, 640 N.Y.S.2d 845 (1996) ... 22

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 17

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) ........................................................................ 22

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)
............................................................................................................................................ 12, 20

*Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010)..................... 7

*Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012) ............................................ 19

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................................... passim

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip
Copy, 2009 WL 6615729 (S.D.N.Y. November 27, 2009) .................................................. 6, 8

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................................ 5

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................................... 11, 20

*deMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)..................... 15, 24

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ........................................................ 4

*Diaz v. E. Locating Serv.*, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)................. 15, 20, 23, 24

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y.
January 21, 2011)...................................................................................................................... 6

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .......... 7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................... 5, 6, 9, 15

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .................................................................... 5

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................................. 10

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ........................................................................ 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 9

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).......................................................... 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).. 11, 14, 15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................................................. 14

*In re Colt Indus.,* 155 A.D.2d 154, 157 (1st Dep't 1990)............................................................ 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177
(S.D.N.Y. July 27, 2007) ....................................................................................................... 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)............... 18

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................... 15

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)...................... 21

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)................................... 15

*In re Prudential Securities, Inc.,* 164 F.R.D. 362 (S.D.N.Y 1996)............................................. 21

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................. 8

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................ 14

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ........................................................................ 20

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ...................... 5

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)......................... 23, 24

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 12

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ......................................................... 5, 6, 15

iii

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ................................................. 14

*McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005) ................................................................ 8

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ............................................. 23

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................................................................................ 7

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006)8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 20

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19 (S.D.N.Y. 2016) ................................................................................................................................................. 13

*Raniere v. Citigroup Inc,*, 310 F.R.D. 211 (S.D.N.Y. 2015) ................................................ 17, 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26(E.D.N.Y. 2006) .................... 5

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ....................................................................................................................... 12

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ......................................................................... 6

*Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) .............................. 20

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................................... 8

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)...... 9

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ................................................................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................... 10, 18, 20, 21

*Weigner v. City of New York*, 852 F.2d 646 (2d Cir.1988) ........................................................ 22

*Weigner v. New York*, 488 U.S. 1005 (1989) ............................................................................. 22

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................. 12

**Statutes**

29 U.S.C. § 216(b) ......................................................................................................................... 1

**Other Authorities**

4 Newberg on Class Actions § 13:30 (6th ed.) ........................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 1, 4, 5, 23

Fed. R. Civ. P. 23(a) ............................................................................................................ passim

Fed. R. Civ. P. 23(b) ................................................................................................... 4, 5, 8, 9

Fed. R. Civ. P. 23(c) ................................................................................................................ 21

Fed. R. Civ. P. 23(e) ................................................................................................................ 10

## INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. The Parties' $450,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff seeks an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release(the "Settlement Agreement"); and (3) approving the FLSA Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On June 14, 2021, Plaintiff filed the instant lawsuit alleging class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff sought to recover, on behalf of himself and others he claimed were similarly situated, unpaid overtime compensation, and statutory penalties.

Defendants filed their Answer to the Complaint on July 23, 2021.  Defendants denied and continue to deny that Plaintiff's allegations have any merit or that they engaged in any illegal or improper conduct. On October 7, 2021, Defendants filed a Motion to Substitute Counsel to have Duane Morris LLP replace Minerva & D'Agostino PC as counsel of record for Defendants Hunter Business School, Inc. and Jay Fund. The Court granted Defendants' Motion on October 8, 2021. Thereafter, the Parties informed the Court of their intention to engage in formal, private, class-wide mediation with Dina Jansenson, Esq. of JAMS. On November 23, 2021, the Parties filed a

Joint Motion to Stay proceedings 120 days as they were pursuing private mediation, which was granted by the Court on November 30, 2021. A full-day mediation was held on March 3, 2022, where the parties made progress towards a class settlement in principle, subject to certain outstanding material terms. On March 21, 2022, the Parties filed a second joint Motion to stay proceedings as they were reverting back to the mediator for further discussions, which the Court granted on March 22, 2022. The parties continued to negotiate the settlement terms, which have been agreed upon and memorialized first in a legally binding term sheet dated April 15, 2022, and then by the Settlement Agreement fully executed on May 6, 2022.

By Report and recommendation dated January 24, 2023(Dkt. No. 29), later converted to an Order on January 27, 2023, this Court entered an Order preliminarily approved the settlement, conditionally certified the settlement class, appointed Lee Litigation Group, PLLC as Class Counsel, approved Advanced Litigation Strategies, LLC as Settlement Claims Administrator, and authorized notice to all Class Members (the "Preliminary Approval Order").

## II.    Overview of Investigation and Discovery

Plaintiff's Counsel conducted a thorough investigation of the Parties' claims and defenses, focusing on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification.  In anticipation of the mediation ultimately scheduled for March 3, 2022, Defendants produced for Plaintiff a sampling of class members' earnings records and time records during the class period, including a daily breakdown of hours worked, Hunter Business School's employee handbook, and a class list containing class members' positions, and dates of employment. The class list included 86 covered employees, including careers service advisors, financial aid counselors, admissions representatives, and administrative staff, dating from 2015 to the present. Plaintiff's Counsel also interviewed Plaintiff concerning the

claims in the case. Based on this discovery, Plaintiff's Counsel was able to assess the merits of Plaintiff's claims, the likelihood of class or collective action certification, and potential damages.

### III.    Settlement Negotiations

On March 3, 2022, after having engaged in numerous informal telephonic settlement discussions, the Parties engaged in a full-day mediation with Dina Jansenson, a highly regarded mediator of JAMS with extensive experience mediating wage and hour class action settlements. During this mediation, the Parties negotiated the principal terms of the settlement.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $450,000 | The Fund covers all of Defendants' obligations under the settlement including, attorneys' fees and costs, administration fees, Class Members' awards, a service award and a release payment to the Named Plaintiff. |
| Attorneys' Fees | $150,000 | Class Counsel has filed a motion for approval of attorneys' fees, cost and expenses with this motion. |
| Costs & Expenses | $6,465.94 | Filing Fee, Service Fee, Mediation, Investigation, Mailing, and Printing Fees. |
| Administration Fees | Advanced Litigation Strategies, LLC $25,000 | Administration Fees are to be paid out of the Gross Settlement Fund. |
| Service Award | $10,000 | Service award to Named Plaintiff for his assistance to Class Counsel, and service on behalf of the Class. Class Counsel has filed a motion for approval of service award simultaneously with this motion. |
| Release Payment | $15,000 | Release payment to Named Plaintiff in consideration for his global release of all claims. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is an Opt-out settlement, not on a claims made basis. |
| Allocation Formula | How will the individual settlement allocations be calculated? | After the deduction of all court-approved service award, release payment, attorneys' fees and costs, and administration fees from the Settlement Fund, individual settlement allocations will be computed |

| | | based on the number of weeks worked by Class Members during the relevant period. |
|---|---|---|
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York state law wage and hour claims.  Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |
| Reversion | Is there any reversion? | No. Any unclaimed funds remaining in the fund after 90 days of the mailing date, shall be donated to a non-profit organization, Shield.org, an organization devoted to the education, care and job placement of disabled children and adults. |

## **ARGUMENT**

### I.      **The Settlement Class Meets the Legal Standard for Class Certification**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On January 27, 2023, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rules of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiff and all career service advisors, financial aid counselors, admissions representatives and administrative staff (comprised of secretaries, receptionists and COVID testers) employed by Defendants at any time from June 14, 2015 through November 30, 2021, who did not opt out of the litigation. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are a total of 87 class members.

### B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here.

This case involves numerous common issues. Plaintiff and Class Members all bring common claims involving allegations that Defendants failed to pay Class Members the proper overtime wages for all hours worked due to misclassification of non-exempt workers as exempt, which Defendants deny. Plaintiff also alleges, and Defendants deny, that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendant violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

### C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiff's claims arise from the same factual and legal circumstances

6

that form the bases of Class Members' claims. Plaintiff and Class Members performed the same or similar job duties as non-exempt employees employed by Defendants during the Class Period. Plaintiff and Class Members make the same allegations regarding unpaid overtime. Plaintiff and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiff satisfies the typicality requirement.

### D. Adequacy of the Named Plaintiff

Named Plaintiff Daniel D'Angelo is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff's and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class.

### E.  Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.  Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all non-exempt employees were not properly compensated for overtime hours worked due to misclassification as exempt, and that all non-exempt workers failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among

8

Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730), at \*16 (S.D.N.Y. Sept. 29, 2006 (plaintiffs "introduced sufficient proof that Defendant engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2.  A Class Action Is a Superior Mechanism

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct

occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

### A.  The Proposed Settlement Is Substantively Fair

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

---

[1] Defendants deny Plaintiff's allegations and assert that it complied with all applicable laws and regulations at all times.

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1. Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with 87 putative class members with fact-intensive claims under both federal and state law.

Although the Parties have already undertaken time and expense litigating and mediating this matter, further litigation without settlement would necessarily result in additional expense and delay. There would be depositions, expert discovery, motions for conditional collective certification and for class certification under Fed. R. Civ. P. 23, a motion for decertification, and ultimately summary judgment proceedings, each at significant cost to the parties. A complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

11

### 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the administrator mailed the Court-approved notices ("Notices") to the Class Members. The Notices explicitly informed Class Members of their rights and the procedures to participate in the NYLL and FLSA settlements.  Around May 10, 2023, the administrator received an inquiry from Mr. Alton Lazarus, who was not on the Class List and informed Parties. On June 5, the administrator was advised by Defendant's Counsel that Parties had agreed to include Mr. Lazarus in the class, and he was mailed a Notice Packet. After receipt of the Notice, only 1 Class Member objected to the settlement, and 0 out of 87 Class Members exercised their right to opt-out. Therefore, the second *Grinnell* factor weighs in favor of final approval.

### i.   Objection of Noreen Iadanza

The Court should overrule the objection of Noreen Iadanza.  While the Court should hear the objector and allow her the opportunity to voice her concerns, it should also keep in mind the interests of the uncomplaining majority – the 86 Class Members who hope to receive their settlement checks as soon as possible.  See *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423 at *3 (E.D.N.Y. May 22, 1990).  The majority's implicit approval of this settlement is a "strong indication" that it is fair, and that the Court should grant final approval. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)

First, Ms. Iadanza did not specify any *grounds* for her objection.  Instead, she simply stated "I have outlined in Attachment #1.  My paychecks that I have in my files…" To her objection she attached a self-created spreadsheet, however, upon information, the calculations and data therein are inaccurate. Both the Settlement Agreement and Notice require objections to contain "all reasons for the objection" (*See* Settlement Agreement at § 2.9(A); Notice to Class at ¶12.)   As the leading treatise explains, "objections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them."  4 Newberg on Class Actions § 13:30 (6th ed.). Courts have thus held that when an objection does "not conform to the requirements set out in the Notice Form for objecting to the settlement," the "objection is deemed waived."  *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp*., 318 F.R.D. 19, 23 n.1 (S.D.N.Y. 2016).

Although the objection is unclear, what Plaintiff believes Ms. Iadanza is alleging is that she is owed more (her self-calculated amount of $16,248.58) and therefore objects to the settlement because she will not be receiving her full amount alleged to be owed.  However, as with all settlements, this settlement is a compromise and does not provide a guaranteed 100% recovery. There is a mechanism by which Ms. Iadanza may pursue her claims individually for potentially greater compensation – she was free to opt out of the settlement and pursue her claims on her own.

Moreover, the objection is not responsive to the specific material terms of the settlement. Ms. Iadanza does not allege that the substantial settlement sum of $450,000 is "unfair", or that any other material term of the settlement (the amount of attorneys' fees, administration fees, service awards, allocation formula, scope of release, etc.) is itself "unfair."

In actuality, the settlement is fair for a myriad of reasons – it was reached after significant production by Defendants of employment records, and analysis by Plaintiff's counsel; it was reached after a full day mediation with a highly skilled and experienced mediator; it provides

proportional relief to class members based on an allocation formula taking into account weeks worked; all class members that do not opt-out will be entitled to receive a settlement payment; the Notice mailing results were highly effective, with 87 of the 87 person class receiving notice, the reaction of the class has been overwhelmingly positive, and significantly, the settlement provides for significant recovery on the claims, taking into account both the risks of such claims and the potential collection risks on a greater judgment. On a gross pro rata basis, Class Member will receive approximately $22.36 for each week they worked during the Class Period, or a minimum payment of $1,000.  Lastly, the settlement is so attractive that the administrator was contacted by an individual originally not on the class list, Mr. Alton Lazarus, pleading to be included in the settlement.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The Parties' discovery here meets this standard.  Class Counsel conducted in-depth interviews with Plaintiff to determine the hours he worked, the nature of any potential wage claims he had against Defendants, the wages he was paid, the nature of his daily activities and other information relevant to his claims and the claims of class members. Prior to mediation,

Plaintiff's counsel obtained and reviewed data from Defendants, including a sampling of class members' earnings records and time records during the class period, including a daily breakdown of hours worked, Hunter Business School's employee handbook, and a class list containing class members' positions, and dates of employment. This sample was statistically significant to determine the viability of Plaintiff's claims on a collective and class basis.

Based on these circumstances, the Parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendants' time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz v. E. Locating Serv.*, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (approving settlement where Plaintiff had obtained discovery through an informal exchange of information and engaged in mediation). Therefore, this factor also weighs in favor of final approval.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiff believes his case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve

15

significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra.*

Although Plaintiff believes his case is strong, it is subject to considerable risk as to liability and damages. A trial would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the FLSA and the NYLL, especially in regard to the overtime claim, as whether Class Members were misclassified would be individualized factual analyses based on, among other thing, job duties.

Plaintiff's and Class Members' statutory claims that Defendants failed to provide proper wage notices and statements in compliance with the law would also be risky if the case were to proceed to trial. Since Defendants did provide wage notices and statements to their employees, the only issue is whether they were accurate, which is contingent on Plaintiff prevailing on his other claims. If Plaintiff does not prevail on his overtime claim, then his wage notice and statement claims are mooted.

Accordingly, while Plaintiff believes that he could ultimately establish Defendants' liability, to do so would require significant factual development and the devotion of an extensive amount of resources in an effort to attempt to successfully prosecute his claims and those of the Class. Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

## 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class

16

certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as how many overtime hours were uncompensated. Defendants have experienced and skilled counsel, who will formally oppose any subsequent motion to certify Plaintiff's state-law claims under Rule 23. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor explores Defendants' ability to withstand a greater judgment. Even if Defendants were able to withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (internal citation marks omitted). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Defendants' inability to withstand a greater judgment is, therefore, neutral.

### 7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The $450,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc,*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Wal-Mart,* 396 F.3d at 119).

Significantly, if Defendants were successful in defeating Plaintiff's claim for unpaid overtime, the settlement would represent a more than 100% recovery, because nothing would actually be owed.

Although Plaintiff had originally calculated class liability of approximately $9,000,000 were he to prevail on all of his overtime claims (the settlement representing a 5% recovery), due to the extreme risks of this "all or nothing" exemption case, the parties believe the settlement reached provides for a full and fair recovery, representing over 100% of what Plaintiff and the class may be owed. Moreover, Plaintiff made robust assumptions as to hours worked in calculating the pre-mediation best case scenario.

That this is an "all or nothing" case – meaning a case where an unfavorable outcome on a single legal question would destroy the Plaintiff'' entire case – is indeed critical. In such cases, courts should, due to the heightened litigation risks, substantially increase the "discount" they apply to the plaintiffs' maximum potential recovery. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995). The settlement involving global healthcare company Novartis, and subsequent US Supreme Court decision, underscores the greater-than-usual litigation risks associated with "all or nothing" exemption cases.

In early 2012, Novartis reached a $99,000,000 settlement of claims brought by its current and former pharmaceutical sales representatives, who claimed that they were misclassified as exempt from federal and state overtime laws, under the outside salesman exemption. Like this case, if Novartis's sales representatives were properly classified, then the plaintiffs could not recover any damages. Novartis nevertheless agreed to the settlement despite the fact that the US

18

Supreme Court was then-considering a separate case involving the precise issue raised in the Novartis case: namely, whether the FLSA's outside sales exemption exempts pharmaceutical sales representatives from the overtime pay laws. *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012).

Several months after the Novartis settlement was announced, the US Supreme Court concluded in *Christopher* that pharmaceutical sales representatives are indeed "outside salesmen" under the FLSA and thus are not entitled to overtime pay. The plaintiffs in *Christopher* were therefore left with nothing – no backpay, no liquidated damages, no statutory penalties, and no attorneys' fees. The *Christopher* decision therefore serves as an important reminder of the heightened risk associated with "all or nothing" litigations – had the *Christopher* decision been issued just a few months earlier, the Novartis plaintiffs would likely have been left empty-handed and Novartis itself would have escaped unscathed.

The Novartis situation has direct application in this case. While Plaintiff may have originally had a multimillion dollar "best case" scenario – which amount, Defendants contend, is grossly over-exaggerated – it only takes one decision from one court to leave Plaintiff with $0.00. If that occurs, Plaintiff, like the plaintiffs in Christopher, would be left with nothing. For this reason alone, the settlement agreed upon by the parties is fair and reasonable.

As stated, if Defendants succeeded at trial in establishing that Plaintiff and the class were properly paid for all hours worked, Plaintiff and Class Members would run the risk of obtaining less than the payment being received in the settlement, if anything at all.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Thus, the *Grinnell* factors all weigh in favor of granting final approval of the Settlement. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

### B.  The Proposed Settlement Is Procedurally Fair

#### 1.  The Settlement Was the Result of Arm's Length Negotiation

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute

[their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the Parties, including a full day mediation with a neutral third-party mediator during which the Parties engaged in a vigorous exchange regarding their respective claims and defenses. Class Counsel spent significant effort to achieve the $450,000 settlement. The comprehensive discovery conducted enabled Class Counsel to perform class-wide damage calculations. At all times during the settlement process, the Parties negotiated on an arm's-length basis, including participating in mediations Lee Dec. at ¶15. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.

### 2. The Distribution of Class Notice Satisfied Due Process

As 87 of the 87 Class Members received the class settlement notice (100%), we believe that the result of the class notice distribution is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each

case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d 154, 157 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. Defendants provided a class list of 86 Class Members.  In plain language that is easily understood by the average person (and was previously approved by this Court), the claims notices set forth essential information in English, including the background of the action, the terms of the settlement, the plan of allocation of the settlement fund, and the various rights of class members under the settlement (including the right to opt-out, file claim forms, file objections and attend the Fairness Hearing).  The Claims Administrator disseminated the class notice to 86 Class Members, for whom contact details were provided by Defendants. Although 13 notices were returned as undeliverable, Advanced Litigation Strategies, LLC conducted a skip

trace for them. After diligently pursuing deliverable mailing information, Advanced Litigation Strategies, LLC re-mailed notices to 13 Class Members. Around May 10, 2023, the Claims Administrator received an inquiry from Mr. Alton Lazarus, who was not on the Class List and informed Parties. On June 5, the Claims Administrator were advised by Defendants' Counsel that Parties had agreed to include Mr. Lazarus in the class, and he was mailed a Notice Packet Therefore, the Administrator successfully notified 87 of the 87 Class Members, for 100% total deliverable rate. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

### III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law

Plaintiff also requests that the Court approve the settlement of the FLSA claims. He has brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who endorse, deposit and/or cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*,

23

2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶ 15. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of May 8, 2023, the deadline for class members to object to or opt-out of the settlement, only 1 individual has objected to the settlement, and no individuals have chosen to opt out. Lee Dec. ¶¶ 20-21. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: July 10, 2023

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: /s/ C.K. Lee
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*