UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANIEL D'ANGELO,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

                    Plaintiff,

          -against-


HUNTER BUSINESS SCHOOL, INC. and
JAY FUND,
                   Defendants.
------------------------------------------------------------X

**MEMORANDUM
 AND ORDER**

21-CV-03334 (JMW)

C.K. Lee, Esq.
Anne Seelig, Esq.
**Lee Litigation Group, PLLC**
148 W. 24th Street, Ste 8th Floor
New York, NY 10011
*Attorneys for Plaintiff Daniel D'Angelo,*
*FLSA Collective Plaintiffs and the Class*

Eve Irene Klein, Esq.
Katelynn Mimi Gray, Esq.
**Duane Morris LLP**
1540 Broadway
New York, NY 10036-4089
*Attorneys for Defendants Hunter Business School, Inc.*
*and Jay Fund*

Noreen Iadanza
*Objector, appearing pro se*

**WICKS,** Magistrate Judge:

      Plaintiff Daniel D'Angelo was employed by Defendants Hunter Business School

("Hunter") and Jay Fund ("Jay") as a Financial Aid Adviser.  (DE 1.)  On June 14, 2021,

Plaintiff, on behalf of himself and others, commenced this wage and hour class and collective

action against Defendants alleging Defendants failed to pay proper overtime wages due to

misclassification of non-exempt workers as exempt under the Fair Labor Standards Act, 29

U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law § 190, *et seq*. ("NYLL").  (*Id.*)

Following a period of informal discovery and investigations and a full day of formal mediation,

the parties achieved a settlement, resolving the dispute. The parties then entered into a settlement

agreement on May 6, 2022.

Before the Court are the following three motions: (i) Plaintiffs' motion for class

certification and final approval of the class action and collective settlement (DE 36); (ii)

Plaintiffs' motion for approval of a service award and release payment (DE 39); and (iii) Class

counsel's motion for attorneys' fees, expenses, and costs and administration fees (DE 41).  The

settlement agreement itself contemplates that all three motions would be considered at the

fairness hearing (DE 28-1 at 11).

For the reasons set forth below and on the record at the fairness hearing held July 25,

2023, the Court grants all three motions.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2021, named Plaintiff Daniel D'Angelo initiated this action on behalf of

himself and others similarly situated, alleging wage and hour violations under both the FLSA

and NYLL.  (DE 37 at 1.)  Hunter employed Plaintiff as a Financial Aid Adviser between

October 16, 2018 and March 1, 2021.  For the duration of his employment, Plaintiff earned a

fixed salary of $40,000.22 per year.  (DE 1 ¶ 11.)  Plaintiff was required to advise students and

prospective students about available financial aid programs.  (*Id.* ¶ 12.)

From October 2018 to March 2020, Plaintiff adhered to a fixed schedule and worked

forty-two (42) hours per week.  (*Id.* ¶ 13.)  Subsequently, Defendants laid off several financial

advisors during the initial stages of the COVID-19 pandemic; however, Hunter's enrollment

2

increased significantly during this time.  (*Id.* ¶ 14.)   As a result, Plaintiff began working approximately eighty (80) to ninety (90) hours per week in order to address this influx of new students.  (*Id*.)  Plaintiff alleges that he was not paid overtime wages for his overtime hours during and after the pandemic because Defendants improperly classified him as "exempt."  (*Id.* ¶ 15.)

Plaintiff asserts that this exempt classification was erroneous for two reasons: *first*, he exercised no executive or administrative power in his role as an adviser, and *second*, his salary was far too low to qualify as exempt in Nassau County under NYLL.  (*Id.* ¶¶ 16-17)  In sum, Defendants were allegedly obligated to pay Plaintiff at least $60,000 in addition to his $40,000 base yearly salary.  (*Id.* ¶ 19.)  After voicing his concerns to several coworkers, Plaintiff allegedly determined that eighty-six (86) employees (including career services advisers, instructors, and laboratory assistants) had been similarly misclassified, and that they too were uncompensated for their overtime labor.  (*Id.* ¶ 20.)

On July 23, 2021, Plaintiffs filed their Answer to the Complaint, and denied all material allegations.  (DE 11.)  Soon after a scheduling order was adopted on October 4, 2021 (*see* DE 13), the parties pursued mediation with Dina Jansenson of JAMS (JAMS, Dina R. Jansenson, Esq., https://www.jamsadr.com/jansenson/, last visited July 26, 2023) (DE 37 at 1.)  The mediation was held on March 3, 2022 and negotiations continued thereafter, resulting in a binding term sheet exchanged on April 15, 2022, and leading to an executed Settlement Agreement on May 6, 2022.   (DE 28-1; DE 37 at 2.)  The parties then filed a motion for preliminary approval of the class settlement (DE 26), which was referred to the undersigned by the Hon. Gary R. Brown for a report and recommendation ("R&R") (Electronic Order dated May 23, 2023).

3

On January 24, 2023, the undersigned issued an R&R recommending approval of the settlement, and conditionally certifying the class and approving the collective action (DE 29). Thereafter the parties consented to the undersigned for all purposes (DE 30, DE 31), and the undersigned converted the R&R to an Order (Electronic Order dated January 27, 2023).  The parties appeared before the undersigned on March 6, 2023 (DE 35), and a briefing schedule for final approval of the class certification and settlement approval was set, and a fairness hearing was scheduled for July 25, 2023.  (*Id.*)

The fairness hearing took place as scheduled on July 25, 2023, with counsel and the Objector presenting their respective positions.

## DISCUSSION

### I.    CLASS CERTIFICATION

#### A.  Legal Standard

"Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  Additionally, where, as here, a plaintiff moves to certify the class pursuant to Rule 23(b)(3), plaintiff is also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(3)).  This is satisfied if the resolution of the legal and factual questions of each class member's case can be achieved through generalized proof, and those issues are more substantial than the issues which are subject to individualized proof.  *Id.*

4

The requirements for Rule 23 class certification must be established by a preponderance of the evidence and subject to a rigorous analysis. *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012). Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013). "Courts have substantial discretion in determining whether to certify a class." *Id.* "[W]here a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006). For purposes of settlement, Defendants do not oppose conditional certification.

Here, the Class Members consist of the named Plaintiff as well as all career service advisors, financial aid counselors, admissions representatives and administrative staff who were employed by the Defendants from June 14, 2015 up until November 30, 2021 and did not opt-out of the litigation. (DE 37 at 4.)

In determining whether final class certification should be granted, the undersigned looks to the prongs under Rule 23: numerosity; commonality/typicality; adequacy of representation and predominance/superiority.

### a. *Numerosity*

The proposed Class consists of 87 class members, which is deemed to be "sufficiently numerous." (DE 29 at 10); *see* Fed. R. Civ. P. 23(a)(1) (noting that a settlement class can be certified where it is "so numerous that joinder of all members is impracticable"). And, because the class exceeds the 40-member threshold, the numerosity factor is considered satisfied. *Avila*

*v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16,

2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)) ("A

proposed class of more than 40 members presumptively satisfies the numerosity requirement.").

Thus, the numerosity prong is satisfied here.

b. ***Commonality and Typicality***

"The commonality and typicality requirements tend to merge into one another, so that

similar considerations animate analysis of Rules 23(a)(2) and (3)". *Marisol*, 126 F.3d at 376.

Rule 23(a)(2) requires a plaintiff to show "questions of law or fact common to the class" and

Rule 23(a)(3) requires that plaintiff's claims "are typical of the claims. . . of the class." *Avila*,

2022 WL 3370024 at *3; Fed. R. Civ. P. 23(a)(2)-(3)).   This can be "easily satisfied" by a single

common issue. *Avila*, 2022 WL 3370024 at *3; *Francisco v. NY Tex. Care, Inc.*, No. 19-CV-

1649 (PKC) (ST), 2022 WL 900603, at *6 (E.D.N.Y. Mar. 28, 2022) ("'Even a single common

question' will suffice").   Critically, a plaintiff must demonstrate the proposed class has suffered

the same injury.  *Avila*, 2022 WL 3370024 at *3.

The named Plaintiff's claims and those of the proposed class members are the same.  (DE

37 at 6-7.)  There is at least one common issue relative to all class members and the Plaintiff: the

misclassification of non-exempt employees as exempt resulting in unpaid overtime hours.  (*Id.*)

Further, these claims by both the Plaintiff and the class arose from the same event, namely, the

misclassification of employees.  (*Id.*)

For these reasons, the commonality/typicality factor has been easily met.

c. ***Adequacy of Representation***

There are two inquiries as to the "adequacy" prong, namely, adequacy of Plaintiff and

adequacy of class counsel to represent the class.  "Determination of adequacy typically entails

inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotes omitted).

Here, Plaintiff's interests align with those of the proposed Class Members. (DE 37 at 7.) Plaintiff seeks the same relief as the Class Members, namely, payment for overtime wages due and owing and related damages provided for in the FLSA and NYLL. (*Id.*)

As to the qualifications of Plaintiffs' counsel, the record amply supports that the firm and the lawyers handling this matter have extensive experience in wage and hour class and collective actions. (DE 29 at 12-13.)

For these reasons, adequacy of representation through the named Plaintiff and Class Counsel C.K. Lee has been met.

### d. *Predominance and Superiority*

Plaintiff must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3); *see Avila*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *4 (E.D.N.Y. Aug. 16, 2022). Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081, at *4 (E.D.N.Y. Oct. 8, 2020) (quotes omitted). The focus is on whether there are

questions of liability common to the class members. *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *12 (E.D.N.Y. Jan. 19, 2012). Wage claims are especially suited for class litigation. *Id.* at *13. Individualized defenses and differing damages do not necessarily defeat predominance. *See Jankowski v. Castaldi*, No. 01-cv-0164, 2006 WL 118973 at *4 (E.D.N.Y. Jan. 11, 2006).

This case presents a common core question of Defendants' failure to pay the overtime wages which predominates over any other legal theory Class Members might have individually. Further, even though damage calculations are individualized and distinct, such a calculation does not prevent a finding of predominance for class certification purposes. *See Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 183 (W.D.N.Y. 2005) (still finding predominance existed despite the individualized calculation of damages in an overtime suit).

As for superiority, "[t]he superiority requirement is satisfied where a class action would achieve economies of time, effort, and expense, and promote uniformity of decision[s] as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Buchanan*, 2020 WL 8642081 at *4. Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: "(1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). A class action is superior where they "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *6 (S.D.N.Y. Mar. 25, 2014).

The form of a class action here is far superior to other available methods adjudicating the claims presented in this case because (1) of the expense of litigation and the numerosity of claims; (2) there was no indication of pending cases by individual class members against Defendants here; (3) the conduct occurred in this District so it was sensible to contain the action in this Court; and (4) class treatment will foster uniformity in resolving the issues and "achieve judicial economy, convenience and fairness to all parties."  (DE 37 at 9-10.)

Based upon the foregoing, as well as for the reasons addressed on the record in the fairness hearing, the motion to certify the class pursuant to Rule 23 for settlement purposes is granted.

## II.    CLASS SETTLEMENT APPROVAL

Under Fed. R. Civ. P. 23(e), class action settlements are not effective until they receive court approval which looks to whether the settlement "is fair, adequate, and reasonable, and not a product of collusion." *Mills v. Capital One, N.A.*, No. 14-civ-1937 (HBP), 2015 WL 5730008 at *3 (S.D.N.Y. Sept. 30, 2015) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  In doing so, the court analyzes whether the settlement exudes procedural and substantive fairness—looking to the negotiation process through the *Grinnell* factors and the settlement terms themselves. *Id*.

When looking to whether the agreement was procedurally fair, courts look to whether parties engaged in "arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id*. at *4 (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).  In considering whether the settlement is substantively fair, courts look to the *Grinnell* factors, namely:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount

9

of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at *4.[1]

The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id.* Both sets of factors are considered below.

Defendants provided a list of 86 Members which set forth the required information under Fed. R. Civ. P. 23. When notices were returned as undeliverable, administrator Advanced Litigation Strategies, LLC conducted a skip trace for those persons and re-mailed notices to them. (DE 37 at 22-23.) Further once parties received the inquiry from another individual, they discussed whether he should be included, and accordingly sent him a Notice Packet, bringing the total number of Class Members to 87. (*Id.* at 23.) Thus, the parties performed its due diligence in accordance with the Federal Rules.

---

[1] Typically, parties cannot privately settle FLSA claims absent the approval of the court under the fair and reasonable standard set forth in *Cheeks v. Freeport Pancake House, Inc. See* 796 F.3d 199 (2d Cir. 2015). Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Operating Corp.*, No. 16-CV-1052 (KAM) (JO), 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017) (quotes omitted). Therefore, the Court need not incorporate a review under *Cheeks* here but still does so briefly below.

### a. Factors 1, 4, 5, and 6: Costs, Risks and Delay of Trial and Appeal

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity,

expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability

(*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of

maintaining the class through trial (*Grinnell* Factor 6).  *See Mikhlin v. Oasmia Pharm. AB*, No.

19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (quoting *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.)  "Class action

suits have a well-deserved reputation as being most complex."  *Rosenfeld v. Lenich*, No. 18-CV-

6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 4, 2021).

Further protracted litigation would likely result in more expenses and delays and if the

case were to proceed to trial.  (DE 37 at 17.)

For these reasons, this factor weighs in favor of settlement approval.

### b. Factor 2: The Reaction of the Class to the Settlement

Courts in this Circuit have found that the reaction of the class factor is the most

significant factor in considering adequacy.  *See Etienne v. Reliant Capital Sols., LLC*, No. 16-

CV-2359 (WFK) (JO), 2019 U.S. Dist. LEXIS 77329, at *8 (E.D.N.Y. May 7, 2019); *In re Visa*

*Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (same).

The Court previously could not determine whether this factor weighed in favor or against

settlement approval because the members had not yet received the notice of settlement.  (DE 29

at 29); *see Chang v. Philips Bryant Park LLC,* No. 17-CV-08816 (LTS) (SLC), 2019 WL

8105999, at *8 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL

104812 (S.D.N.Y. Jan. 9, 2020) ("Because the Class Members have not yet received notice of

the settlement, it remains too early to evaluate the second Grinnell factor.").  The undersigned

stated that this factor was to be determined upon the parties' demonstration of sufficient evidence at the final approval stage.

Since then, Plaintiffs advised that the administrator mailed the appropriate notices to the Class Members, which explicitly informed Members of their rights and the procedures to participate in the NYLL and FLSA settlements.  (DE 37 at 12.)  Out of all the mailings, Plaintiffs only received one inquiry in May 2023, and the parties agreed to include that individual in the class and provided him with a Notice Packet.  (*Id*.)  Once all Members received Notice, only one Class Member objected to the settlement, namely, Noreen Iadanza.  (*Id*.)  No class member opted out.  (*Id*.); *see In re GSE Bonds Antitrust Litig*., No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *13 (S.D.N.Y. June 16, 2020) (stating that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Diamond v. Fogelman*, No. 90-CV-0900, 1992 U.S. Dist. LEXIS 9734, at *9 (E.D.N.Y. June 24, 1992) (finding that this factor weighs in favor of approval since no objections were received and 58 requests for exclusion were received constituting about 1.97% of the total units involved).

At the fairness hearing, the Court heard from the sole objector, Ms. Iadanza.  Although there is very little detail in her written objection (*see* DE 43-2 at 15), she alleges that she is owed more than the calculated settlement amount and objects because she states this is not the full amount owed to her.  *Id.*  In sum, she claims the settlement monies provided to her should be greater.  This of course, does not take into account the risks, costs, protraction and vagaries of litigation.  Further, she could, of course, have opted out of the settlement and pursued her claims against Defendants individually but chose not to do so.  (*Id*.)  Her objection therefore, is overruled, and should not derail the proposed settlement.

For these reasons, this factor weighs in favor of settlement approval.

### c. Factor 3: Arms-Length Negotiations After Meaningful Discovery and The Stage of The Proceedings and The Amount of Discovery Completed

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

The settlement was negotiated at arms-length, as it was reached between parties with experienced counsel who engaged in a full-day of mediation discussions on March 3, 2022 with an experienced neutral mediator. (DE 37 at 20-21.) The parties continued negotiations through counsel on their own and came to agree upon the instant settlement terms in the Agreement. (*Id*.) Along the way, the parties engaged in meaningful discovery to arrive at this juncture — Defendants sampled class members' earnings and time records during the relevant period and analyzed the employee handbook. (DE 37 at 14.) Plaintiff's counsel interviewed Plaintiff to obtain pertinent information as to the hours worked and the nature of the claims and defenses for each side. (*Id*.) This discovery put the parties in a unique position to weigh the strengths and weaknesses of the case and thus addressed whether settlement was the better option as opposed to proceeding to trial. (*Id*. at 15.) This factor weighs in favor of settlement approval.

### d. Factor 7: The Ability of The Defendants to Withstand a Greater Judgment

If a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022).

Here, previously the Court was unable to make a determination on this factor namely because there was no evidence pertaining to Defendants' financials. However, this factor alone

does not indicate an unfair settlement.  (DE 37 at 17.)  In fact, settlement agreements have been found fair even where this factor weighs against a grant of approval.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47.

Thus, this factor is neutral.

**e.   Factors 8 and 9: Reasonableness of the Settlement**

The Court combines factors 8 and 9 for the purposes of the settlement approval analysis. See *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48. Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.,* No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotes omitted).  Rather, the Court considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation.  *Id.*  For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed.  *Id.*

The Settlement Fund is $450,000 where each Class Member would receive a payment "proportional to the duration of their employment; those who worked for longer periods will receive greater payments than those who worked for shorter periods."  (DE 29 at 30.)  And no Class Member is to receive less than $1,000.  (*Id.*)

Upon approval, the costs and fees will be reduced from the Settlement Amount and each Class Member will receive their allocated sum at one time.  Had the Class Members waited until after trial to receive a potential sum of damages, they would be waiting months, even years to see such monies. This settlement amount reflects a balance of the strength of the Class Members'

14

claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

Plaintiffs are aware that if Defendants were to prevail at trial, Plaintiffs run the risk of recovering nothing at all, but on the other hand, if Plaintiffs were to prevail on all of the overtime claims, the damages could reach $9,000,000. (DE 37 at 18-19.) The parties reflected on these risks and found the settlement amount to be reasonable in light of the possibilities that could occur during trial. (*Id*. at 19-20.)

For these reasons, factors eight and nine weigh in favor of settlement approval. Accordingly, the class action settlement is approved as fair and reasonable.

### III.    THE COLLECTIVE ACTION SETTLEMENT

#### A. Legal Standard

Section 216(b) of the FLSA provides, in relevant part:

> An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are 'similarly situated,' courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit." *Id.* Approval of a collective action is a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the

named plaintiffs with respect to whether a FLSA violation has occurred." *Id.*  All that is needed is a modest factual showing that plaintiffs and potential opt-in plaintiffs were victims of a common policy that violated the law.  *Id.*  Particularly, in an exemption case, plaintiffs can do this by showing there were other employees similarly situated with respect to their job requirements and pay provisions, who were classified as exempt under a common policy or scheme.  *Id.*  The court may consider the pleadings as well as supporting affidavits.  *Chang v. Philips Bryant Park LLC,* No. 17-CV-8816 (LTS) (SLC), 2019 WL 8105999, at *12 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted,* 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). "If plaintiffs meet this 'fairly lenient standard,' conditional certification is typically granted and notice to potential plaintiffs authorized." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *4 (E.D.N.Y. Apr. 2, 2012).

The second step occurs later, on a more complete record.  *Myers*, 624 F.3d at 555. Plaintiffs must show that the plaintiffs who opted in are actually similarly situated to the named plaintiffs.  *Id.*  The undersigned considers approval of the FLSA collective action through this lens.

Even under the "fairly lenient standard" at the conditional certification stage, Plaintiffs met the burden of showing that the named Plaintiff and the Class Members were similarly situated, namely because they had substantially similar job requirements and pay provisions. (DE 29 at 17.)  Essentially, they were all deprived of proper overtime wages because of the misclassification as exempt employees.  (*Id.*)

Since this case involves both a class action and collective action, the Court finds the court's approach in *Mills v. Capital One, N.A.* instructive.  No. 14-civ-1937 (HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015).

*Mills* involved a class and collection active in which plaintiffs pursued claims, *inter alia*, pursuant to the FLSA and NYLL to recover unpaid overtime and attorneys' fees and costs. *Id.* at *6. In its analysis, the court looked to the negotiation process of the settlement and the factors under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) for approving the class action. *Id.* at *4. The court then briefly looked to *Cheeks v. Freeport Pancake House* for the collective action analysis, noting that it is less stringent than an analysis under Fed. R. Civ. P. 23 governing class action suits. *Id.* at *6. The court only analyzed the collective action to see whether the settlement reflected a fair and reasonable compromise, specifically, whether the settlement occurred as a result of arms-length negotiations. *Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d, 332, 335 (S.D.N.Y. 2012).

Having considered the foregoing, including (i) that the releases are not overly broad and (ii) there is no confidentiality attached to the settlement nor does the agreement contain a non-disparagement clause, the settlement does not run afoul of *Cheeks,* and is therefore approved.

## IV.    MOTION FOR SERVICE AWARD AND RELEASE PAYMENT

Plaintiff has filed a motion for approval of a $10,000 Service Award to Named Plaintiff for his assistance to Class Counsel, and service on behalf of the Class. (DE 37 at 3, DE 39.) This amount is to be taken from the Settlement Fund. (DE 40 at 1.) In addition, he requests a release payment of $15,000 for his release of all claims to be provided to the Named Plaintiff. (*Id.*)

Courts may award class representatives a service award in addition to their share of the settlement award. *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist.

LEXIS 104842, at *26 (S.D.N.Y. June 16, 2020).  In doing so the court looks to a variety of factors, including, "existence of special circumstances" such as "risk…incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff…, any other burdens sustained by the plaintiff" and "the ultimate recovery."  *Id.*

Named Plaintiff argues that the service award is reasonable in light of the time and effort spent on litigating this case on behalf of himself and the other Class Members.  (DE 40 at 1.) And the release payment is justified because it is a release of *all* claims, not just the wage and hour claims pertinent to this settlement.  (*Id.*)

Specifically, here, the named Plaintiff "made important contributions to the prosecution" of this action by assisting in the investigation of the claims by providing detailed information to Class Counsel; regularly communicated with Class Counsel; and assisted in preparing pertinent documents.  (*Id.* at 1-2.)  Further, none of the Class Members, all of whom received the Notice, objected to Plaintiff's proposed Service Award.  (*Id.* at 2.)

The Court here finds that Plaintiff is entitled to the Service Award namely because he took a risk in serving as class representative and suing Defendants.  He runs the risk of becoming the subject of retaliation from his current employers for his participation in this case (DE 40 at 5); he had expended a significant amount of time in this litigation whether it was reviewing relevant documents or engaging in other discovery which "added significant value to the prosecution of the case" (*Id.* at 6-7); and his award of $10,000 is a small fraction (less than 3%) of the total settlement fund in this case (*Id.* at 7).  *See In re GSE Bonds Antitrust Litig.*, 2020 U.S. Dist. LEXIS 104842, at *26-27.  This award incentivizes other claimants to serve as class representatives in related cases, and he should not receive the same award as the other Class Members in light of his efforts.

The responsibility and personal risk born by a plaintiff in an action such as this, is recognized by the courts.  Service awards in the amount of $10,000 and release payments in the amount of $20,000—like Plaintiff seeks here—are reasonable. *See Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *4 (S.D.N.Y. May 23, 2014) (awarding service payment of $10,000); *Chang*, 2019 WL 8105999 at *10 (finding release payment of $20,000 reasonable).  The Court has not found any evidence controverting this finding and accordingly approves the Plaintiff's $10,000 Service Award and $15,000 Release Payment.

## V.     PLAINTIFF'S MOTION FOR FEES, COSTS AND EXPENSES, AND ADMINISTRATIVE COSTS

### A.  Attorneys' Fees

Class Counsel seeks attorneys' fees, costs, and expenses equal to one-third of the settlement fund.  (DE 37 at 3, DE 42 at 1.)  Therefore, based on a Settlement Fund of $450,000, counsel will be requesting attorney's fees of $150,000, exclusive of costs and expenses.  (*Id.*)  The Settlement Agreement caps recoverable attorneys' fees at $150,000.  (DE 28-1 at § 3.3).  These fees are not opposed by Defendants, nor have they been objected to by any Class Member.[2]

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted).  When considering applications for attorneys' fees, courts employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the

---

[2] Even the sole objector did not raise an objection as to the amount of attorneys' fees sought.

case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-CV-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable."); *Kazadavenko v. Atlantic Adult Day Care Center, Inc.*, No. 21-CV-3284 (ENV) (LB), 2022 WL 2467541 at *4 (E.D.N.Y. Apr. 14, 2022) (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, No. 17-CV-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

"[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *see also Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Critically, in order to properly assess the fee application, the movant must submit adequate documentation supporting the requested attorneys' fees and costs. *Fisher v. SD Prot.*

*Inc.,* 948 F.3d 593, 600 (2d Cir. 2020); *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.").

Here, counsel's proposed request for attorneys' fees totaling one-third of the Settlement Fund is well within the range of reasonableness. Plaintiff has noted that counsel "spent more than 129 attorney and paralegal hours prosecuting this case." (DE 42 at 1.) And no class members have objected to the attorney fee award, which he claims is indicative of a reasonable fee award. (*Id*. at 3.); *see Zelster v. Merrill Lynch & Co., Inc*., No. 13-cv-1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (finding lack of objections to class counsel's request for one third of the fund "provide[d] support for Class Counsel's fee request").

Whether the court chooses the lodestar method or the percentage method, courts typically consider the *Goldberger* factors as well. *Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). Accordingly, the undersigned considers the factors below and conducts a Lodestar analysis, which both favor approval of the claimed fees.

Under *Goldberger*, the court considers six factors: (1) time and labor expended by counsel; (2) magnitude and complexities of the litigation; (3) litigation risks; (4) quality of representation; (5) requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.

Here, class counsel spent a significant amount of time in prosecuting this case by "thoroughly investigat[ing] the claims and defenses;" "obtain[ing], review[ing], and analyz[ing] comprehensive wage and hour records." (DE 42 at 8.) In addition, they participated in a full day of mediation which involved a great deal of preparation and continuing negotiation discussions with opposing counsel thereafter. (*Id*. at 8-9.) Counsel had spent over 129 hours of time on this

case amounting to a lodestar amount of over $72,000.  (*Id*. at 9.)  This amount is reasonable because it includes the fee for administering the settlement in the future, which includes responding to Class Members' questions about the Notice process and when they can expect to receive payment.  (*Id*. at 9-10.)  Class counsel's experience in wage and hour litigation should not be penalized for efficiency. Notably, this amount was unopposed by any Class Member.

Second, this case is very intricate and complex, involving both class and collective actions.  *See Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law…These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings.").  And this case is intensely fact-specific, involving several individuals' misclassification as an exempt employee and delving into whether or not each of them was properly paid.  (DE 42 at 11.)  This factor weighs in favor of granting Plaintiff's counsel's motion for fees and costs.

Third, class counsel is quite experienced having participated in over 90 wage and hour class and collective actions which was "directly responsible for the favorable settlement."  (DE 42 at 16.)  The rate at which the firm charges is reasonable considering the experience and qualifications of the attorneys who have labored with this case. (DE 43-1.)

Finally, as for public policy considerations, such an award will encourage experienced litigators, like those involved here, to take on such cases in the face of risk.  Thus, these attorneys should be compensated adequately for the work performed. *Willix v. Healthfirst, Inc.,* No. 07-cv-1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011).

All of these factors weigh in favor of approval of the attorney fee award.

    **i.**    **Lodestar**

A cross-check of fees applying the lodestar analysis is warranted.  In utilizing the lodestar

approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly

rate.  *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

      Here, the number of hours spent litigating this case was 129 at rate varying from $275 to

$800 an hour, amounting to $72,630.50.  (DE 43-1.)  Plaintiff notes that this multiple is only

2.07, which is less than the standard multiplier of three in this District.  Thus, the one-third fees

amount is reasonable in light of the results obtained for Plaintiff and the Class Members, the

work performed on this case, and the risks involved in pursuing the case.  (DE 42 at 20); *see*

*Cohan v. Columbia Sussex Mgmt., LLC*, 12-CV-3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept.

28, 2018) ("Courts regularly award lodestar multipliers from two to six times lodestar.") (citing

*Johnson v. Brennan*, No. 10-CV-4712 (CM), 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16,

2011).

      Further, even if there was some doubt as to whether the fees award should be approved,

the undersigned notes that several other courts in this Circuit have awarded attorneys' fees where

the proposed fees were more than the lodestar calculation.  *See Castillo v. Ocean 21, LLC*, No.

22-CV-00786 (RPK) (RER), 2022 U.S. Dist. LEXIS 199029, at *10-11 (Nov. 1, 2022) (finding

that the awarded attorneys' fees, though more than double the lodestar amount, recognized the

successful negotiation for all parties which saved them further costs, time, and risks of

litigation); *Castillo v. Cranes Express Inc*., No. 18-CV-1271 (PKC) (LB), 2018 U.S. Dist.

LEXIS 210614, at *13 (E.D.N.Y. Dec. 12, 2018) (awarding attorneys' fees that were $4,701 over

the lodestar amount because the proposed fee of one-third of the settlement was fair and

reasonable in light of the low lodestar multiplier); *Gonzalez v. Scalinatella, Inc*. 112 F. Supp. 3d

5, 23-24 (S.D.N.Y. 2015) (citing several cases in which the court granted attorneys' fees that were one-third of the settlement fund but were sometimes over $200,000 of the lodestar figure).

Thus, because the multiplier here would be three, one well within the range of this District, the Court approves the attorneys' fee award of $150,000.

## B. Additional Award for Costs and Expenses

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).

Plaintiff's counsel requests $6,465.94 for filing fees, service fees, mediation, investigation, and mailing and printing. (DE 42 at 20.) Broken down, these expenses are as follows: $402.00 in filing fees; $230.00 in service fees; $4,850.00 in mediation fees; $825.38 in investigation fees; $2.36 in mailing fees; and $156.20 in printing fees. (DE 43 at 3.) Defendants have not taken a position regarding Plaintiff's application for attorneys' fees and costs.

Plaintiff's counsel further urges the court to approve the fees and costs award because their efforts have been performed without compensation as it was "wholly contingent upon achieving a positive result," which it has. (DE 43 at 4.) Thus, the Court concludes that the requested attorneys' fees and costs are reasonable and therefore appropriate. *See Li v. HLY Chinese Cuisine Inc.*, No. 18-CV-5077 (MMH), 2022 WL 1597302, at *8 (E.D.N.Y. Mar. 31, 2022) (approving $1,816 in combined mediation, deposition, filing, mailing, and service costs).

## C. Administration Fees

Finally, Plaintiff requests a $25,000 award for administration fees to Advanced Litigation Strategies LLC to be paid out of the Gross Settlement Fund. (DE 42 at 20.) Specifically, this

amount should be paid to them because they disseminated all notices, performed award calculations per Class Member, and maintained the correspondences with the Class Members. (*Id.*); *see Mills,* 2015 WL 5730008 at *18 (awarding administrator fees to claims administrator where no class member objected to fee, and the fee sought was reasonable).

## CONCLUSION

For all the foregoing reasons and those stated on the record at the fairness hearing, the motions are granted as follows: Plaintiff's Motion for Settlement Class Certification, Final Approval of the Class-Wide Settlement Agreement, and Approval of the FLSA Settlement is **GRANTED** in its entirety (DE 36); Plaintiff's Motion for Approval of the Service Award and Release Fees is **GRANTED** in its entirety (DE 39); and Plaintiff's Motion for Attorneys' Fees, Costs and Expenses and Administration Fees is **GRANTED** in its entirety (DE 41).

In addition to the findings set forth above, the Court makes the following findings:

1.      The Court approves and incorporates herein by reference the releases set forth in the Settlement Agreement, which shall be binding in accordance with the terms set forth therein.

2.      This Court has jurisdiction over the subject matter of this litigation and all matters relating thereto, and over all Parties.

3.      The Court hereby adopts and finally approves, for the purpose of this Order, the definition of the settlement "Class" as that term is defined in the Preliminary Approval Order.

4.      Pursuant to Rule 23, the Court confirms as final its certification of the Class for settlement purposes based on its findings in the Preliminary Approval Order and in the absence of any objections from Class Members to such certification.

5.      Pursuant to 29 § U.S.C. 216(b), the Court approves the FLSA Settlement and

certifies the collective class under the FLSA based on its findings in the Preliminary Approval Order.

6.      The Court confirms as final the appointment of:

- Plaintiff Daniel D'Angelo, as representative of the Class, both under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b); and

- C.K. Lee of Lee Litigation Group PLLC as Class Counsel for the and for individuals who opted into the litigation pursuant to the FLSA.

7.      Notice under the Class Action Fairness Act ("CAFA") is not required pursuant to 28 U.S.C. § 1332 (d)(5)(b) as there are less than 100 individuals in the class.

8.      The Notice afforded Class Members constituted the best notice practicable under the circumstances, was accomplished in all material respects, and fully met the requirements of Rule 23, the FLSA, and due process.

9.      This Action is hereby dismissed with prejudice. However, the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds.  The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.


SO ORDERED this 28th day of July in the year 2023:


/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge